UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD MILLS and
ELMER F. MILLS, JR.,

                     Plaintiffs,

                     **DECISION AND ORDER**
                     09-CV-966A

    v.

BRIAN FISCHER et al.,

                     Defendants.

## I.    INTRODUCTION

Pending before the Court is a motion (Dkt. No. 13) by defendants Brian Fischer, John B. Lempke, and Correction Officer Fedora to dismiss plaintiffs' first amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Defendants seek dismissal on the grounds that the entire basis for plaintiffs' case—defendants' refusal to allow a 16-year-old minor to visit his incarcerated father—is not a legally cognizable claim under 42 U.S.C. § 1983. Plaintiffs contend in opposition that defendants violated state regulations permitting an adult to vouch for the identity of a minor who does not have his own identification. The Court deemed the motion submitted on papers pursuant to FRCP 78(b). For the reasons below, the Court grants the motion.

## II. BACKGROUND

This case concerns an attempt by Elmer Mills ("Elmer") and then-16-year old Kodey Mills ("Kodey") to visit Richard Mills ("Richard") on October 12, 2009 at the Five Points Correctional Facility. Kodey is Richard's son. Elmer also is a relative, though the exact family connection is not clear from the record. When Elmer and Kodey arrived, defendants asked them for identification pursuant to 7 N.Y.C.R.R. § 200.3(a). Kodey presented a birth certificate; additionally, Elmer offered to verify Kodey's identification. Defendants found Kodey's identification deficient and refused to allow him to visit Richard. Kodey subsequently waited outside the building in Elmer's car while Elmer visited Richard. Because defendants did not want Kodey, as a minor, to remain on facility grounds unsupervised, they shortened Elmer's visit with Richard. Elmer's visit lasted about 20 minutes altogether.

Richard, Elmer, and Kodey commenced this case on November 9, 2009 in response to the limitations placed on the October 12, 2009 visit.[1] The essence of the entire case is that the limitations placed on the visit violated Richard's liberty interests and rights of family association and also violated 7 N.Y.C.R.R. § 200.3. Defendants filed the pending motion to dismiss on September 23, 2010. In support of the motion, defendants argue that plaintiffs have no liberty interest or constitutional right in visits lasting longer than 20 minutes. Defendants argue

---

[1] The Court dismissed Kodey without prejudice on April 16, 2010.

further that any injuries that plaintiffs may have suffered were, at most, *de minimis* and not subject to relief through litigation. In response, plaintiffs insist that their injuries were constitutional in nature and that plaintiff Richard's situation differs from that described in defendants' case law because he was not subject to any revocation or limitation of his visitation privileges.

## III. DISCUSSION

### A. FRCP 12(b)(6) and Pro Se Pleadings Generally

"As an initial matter, the Court is mindful that Plaintiff[] [is] proceeding *pro se*, and that [his] submissions should thus be held to less stringent standards than formal pleadings drafted by lawyers. Moreover, when plaintiffs bring a case *pro se*, the Court must construe their pleadings liberally and should interpret them to raise the strongest arguments that they suggest. Still, *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Rotblut v. Ben Hur Moving & Storage, Inc.*, 585 F. Supp. 2d 557, 559 (S.D.N.Y. 2008) (internal quotation marks and citations omitted). The Court will assess the pending motion in this context, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted).

**B.     *Prisoner Visitation***

The essence of plaintiffs' first amended complaint is that defendants unlawfully denied Kodey a visit with his father Richard, even though Kodey had his birth certificate with him and even though Elmer could have vouched for Kodey's identity. Construed liberally, plaintiffs assert a violation of their "right" to association. Elmer's and Kodey's rights to association are no greater than the rights of Richard, the prisoner with whom Kodey sought to associate. *Calderon v. Lantz*, No. 3:06CV61, 2006 WL 2092080, at *3 (D. Conn. July 24, 2006) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 410 n.9 (1989) (holding that the "legitimate penological interests" standard applies to alleged associational infringements on prisoners and non-prisoners alike)).

There are two problems with plaintiffs' claims, however. The lesser problem is that, plaintiffs' interpretation notwithstanding, the plain language of 7 N.Y.C.R.R. § 200.3 does not mandate admission of visitors simply because they present what appears to be adequate identification. The greater problem is that there is no constitutional right to visitation for convicted prisoners and their family members; "family visitations for inmates only constitute a privilege and not a right." *Midalgo v. Bass*, No. 9:03-CV-1128, 2006 WL 2795332, at *16–17 (N.D.N.Y. Sept. 26, 2006) (Report and Recommendation adopted by Chief District Judge Mordue) (citing *Block v. Rutherford*, 468 U.S. 576, 589 (1984); *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125–26 (1977) (holding

4

that one of the more obvious constitutional rights curtailed by confinement is the right to freely associate with those outside the penal institution); *Lynott v. Henderson*, 610 F.2d 340, 342 (5th Cir. 1980) (stating that "[c]onvicted prisoners have no absolute constitutional right to visitation"); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding that a "[prisoner] has no constitutional right to physical contact with his family"); *Hernandez v. McGinnis*, 272 F. Supp. 2d at 227; *see also, e.g., Calderon v. Lantz*, No. 3:06CV969, 2007 WL 2727149, at *2 (D. Conn. Sept. 18, 2007) (citing *Calderon*, *supra*, 2006 WL 2092080, at *3) (other citations omitted); *Saxon v. Goord*, No. 06-CV-826, 2007 WL 1695582, at *4 (W.D.N.Y. June 7, 2007) (Siragusa, *J.*) ("It is well-established that contact visits are a *privilege* for inmates, not a *right*.") (citations omitted).

Moreover, even if plaintiffs had a right to visitation, the abbreviation and partial denial of one visit on one day is, at the most, a *de minimis* violation. Such a violation would not rise to an actionable claim under 42 U.S.C. § 1983. *See Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (noting that *de minimis* infringements and inconveniences do not implicate constitutional rights) (citations omitted).

Lastly, a violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983. *See Doe v. Conn. Dep't of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir.1990) (citations omitted). Furthermore, to the extent that plaintiffs allege that defendants violated one or more directives of the

state Department of Correctional Services ("DOCS"), the violation of a DOCS Directive is not even a violation of New York State law or regulations. *See Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("Thus, a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations or state law; rather, in order to prevail on a § 1983 claim, the allegations asserted must constitute violations of constitutional due process standards.") (citation omitted); *Lopez v. Reynolds*, 998 F. Supp. 252, 259 (W.D.N.Y. 1997) (Telesca, *J.*) ("A prison inmate does not have a viable § 1983 claim based solely on prison officials' failure to adhere to the requirements of prison regulations, directives or policy statements.") (citations omitted).

Under these circumstances, plaintiffs cannot sustain an action against defendants in this forum. Whether plaintiffs would have a viable claim within the state court system is an issue that they will have to decide for themselves.

## IV. CONCLUSION

For all of the foregoing reasons, the Court grants defendants' motion to dismiss (Dkt. No. 13) and denies plaintiff's motion to strike (Dkt. No. 15) as moot. The Clerk of the Court shall close this case.

SO ORDERED.

                                                    *s/ Richard J. Arcara*
                                                    HONORABLE RICHARD J. ARCARA
                                                    UNITED STATES DISTRICT JUDGE

DATED: January 10, 2011